IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAWN R. ESPENAS,                                    No. 3:14-cv-00355-HZ

                 Plaintiff,                      OPINION & ORDER

    v.

CAROLYN COLVIN,
Commissioner of Social Security,

                 Defendant.

Robyn M. Rebers
ROBYN M. REBERS, LLC
P.O. Box 3530
Wilsonville, OR 97070

       Attorney for Plaintiff

S. Amanda Marshall
United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION & ORDER

Gerald Hill
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendants

HERNÁNDEZ, District Judge:

        Plaintiff Dawn Espenas brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## PROCEDURAL BACKGROUND

        Plaintiff applied for SSI and DIB on October 19, 2011, alleging an onset date of February 26, 2006.[1] Tr. 14. Her application was denied initially and on reconsideration. Tr. 136-144, 148-154. On October 28, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 32-54. During the hearing, she amended her alleged onset date to March 31, 2011. Tr. 34. On November 8, 2013, the ALJ found Plaintiff not disabled. Tr. 11-26. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

        Plaintiff alleges disability based on major depressive disorder, anxiety, back pain, post-traumatic stress disorder, and fatigue. Tr. 95, 113, 239. She testified that she is unable to work

---

[1] Plaintiff also applied for SSI and DIB prior to 2009. However, she failed to appear for a hearing on August 10, 2010, and her then-attorney lost contact with her. Tr. 55-60. The ALJ dismissed the case on September 2, 2010. Tr. 66. Plaintiff then reapplied in 2011. Tr. 14.

because she has difficulty completing tasks, leaving the house, being in public, interacting with others (particularly supervisors and men), and lifting more than ten pounds. Tr. 43-49. She was forty-two years old at the time of the administrative hearing. Tr. 36. She graduated from high school and attended one term of college. Tr. 36. She has past work experience as a child care provider, receptionist, file clerk, housekeeper, and elderly care provider. Tr. 36-37. Because the parties are familiar with the medical and other evidence in the record, the Court refers to any additional relevant facts in the discussion section below.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the

Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date. Tr. 16. Next, at steps two and three, the ALJ determined that

Plaintiff has severe impairments of degenerative disc disease of the cervical spine, obesity,

depression, and post-traumatic stress disorder, but that the impairments did not meet or equal,

either singly or in combination, a listed impairment. Tr. 16. At step four, the ALJ concluded that

Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §

404.1567(b) and § 416.967(b) except she is limited to lifting and carrying twenty pounds

occasionally and ten pounds frequently, standing or walking for six hours in an eight-hour day,

sitting for six hours in an eight-hour day, and occasionally climbing ladders, ropes, or scaffolds.

Tr. 19. She is capable of carrying out very short and simple instructions, and is limited to

occasional interaction with the public and casual contact with coworkers. Tr. 19. With this

residual functional capacity, the ALJ determined that Plaintiff is unable to perform any of her

past relevant work. Tr. 25. However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy, such as housekeeper. Tr. 25-26. Thus the ALJ determined that Plaintiff is not disabled. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) assigning "little weight" to the opinions of Plaintiff's psychologist and psychiatric mental health nurse practitioner; (2) failing to include all

functional limitations that were supported by the record in the residual functional capacity (RFC); and (3) finding Plaintiff not credible. The Court discusses the ALJ's credibility finding first, because it impacts the other two issues.

## I.    Credibility

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting her testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Id. at 1284; see also Lingenfelter, 504 F.3d at 1036.

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible

and what evidence suggests the complaints are not credible." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>see also</u> <u>Morgan</u>, 169 F.3d at 599.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…." Tr. 19. He gave "little weight" to Plaintiff's testimony regarding her symptoms because he found it "disproportionate to the objective and clinical findings." Tr. 20.

The ALJ found that Plaintiff's credibility was undermined because, to the extent she has received treatment for her allegedly disabling impairments, that treatment has been routine or conservative. Tr. 22. Impairments that can be controlled effectively with medication or treatment are not disabling for purposes of determining eligibility for benefits. <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006). Hence the ALJ may rely on evidence of effective treatment in making a negative credibility finding. 20 CFR §404.1529(c)(3)(iv) & (v); <u>Tommasetti</u>, 533 F.3d at 1040.

Plaintiff testified that she had bulging disks in her neck that caused pain down her back and right arm. Tr. 48. However, the ALJ noted that Plaintiff has not undergone surgery for her degenerative disk disease of the cervical spine, nor has any treating doctor recommended surgery. Tr. 22. In addition, on June 18, 2012, a myelogram/CT did not reveal any significant nerve impingement and a treating physician stated that Plaintiff was improving with medication and should continue conservative treatment. Tr. 473. The ALJ also noted that while the record reveals that Plaintiff is obese, Plaintiff reported that she was having some success losing weight by walking every day and paying attention to what she ate. Tr. 22. In sum, Plaintiff's positive

response to treatment provided a legally sufficient reason for rejecting her testimony as to the severity of her pain-related limitations.

Plaintiff testified that she is afraid she will have a panic attack when she leaves the house and that her anxiety and stress would interfere with her ability to work. Tr. 43-46. However, the ALJ noted that Plaintiff has not been hospitalized or treated with any intensive mental health program for her mental impairments. Tr. 22. Plaintiff testified that taking lithium had helped with her suicidal ideation, although she was still depressed.[2] Tr. 38-39.

The ALJ also found that Plaintiff's activities of daily living undermined her credibility. Tr. 22. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). The ALJ characterized Plaintiff's daily activities as "essentially normal" and found that they "suggest a higher level of functioning than alleged by Plaintiff." Tr. 22. Specifically, the ALJ found Plaintiff not credible because she "appears able to care for her children with no particular assistance." Tr. 22.

The Court concludes that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of her symptoms, even though the record regarding Plaintiff's daily activities is more nuanced than the ALJ portrays. Plaintiff stated that she cares for her youngest son and helps him with his homework. Tr. 297. She also does some housework, such as cooking, laundry, dishes, and vacuuming. Tr. 299. She walks her dog three times a day. Tr. 299. Plaintiff can pay bills and use a checkbook. Tr. 300. However, Plaintiff also testified

---

[2] The ALJ also pointed to the apparent contradiction between Plaintiff's testimony that she has difficulty interacting with men due to post-traumatic stress from rape and domestic abuse, and Plaintiff's daughter's statement that Plaintiff talked to men via the computer and phone for up to 10 hours a day. Tr. 22. Plaintiff explained this contradiction in her hearing testimony by clarifying that the only man she talks to is her best friend from childhood. Tr. 48. The issue of who Plaintiff communicates with on the phone and computer is not addressed elsewhere in the record, and the Court does not find it necessary to resolve this apparent contradiction.

that she has trouble staying on task with household chores and often requires help from her

children. Tr. 45. Plaintiff's daughter stated that she sees herself as the person in charge of her

siblings and pets, and that Plaintiff struggles with everyday tasks including domestic chores. Tr.

305.

In sum, the Court finds that while the record may be "susceptible to more than one

rational interpretation," the ALJ's decision is supported by substantial evidence and therefore

must be upheld. See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (explaining that

the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and

for resolving ambiguities . . . [therefore the Court] must uphold the ALJ's decision where the

evidence is susceptible to more than one rational interpretation."); see also Treichler v. Comm'r

of Soc. Sec. Admin., No. 12-35944, 2014 WL 7332774, at *4 (9th Cir. Dec. 24, 2014) ("we

cannot substitute our conclusions for the ALJ's"). Accordingly, the Court affirms the ALJ's

credibility finding.

**II.     Medical Evidence**

Plaintiff contends that the ALJ failed to provide legally sufficient reasoning to support

assigning "little weight" to the opinions of psychologist Keli J. Dean and psychiatric mental

health nurse practitioner Isabel Toledo-Silvestre. The ALJ is responsible for resolving conflicts

in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r,

533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of

three types of physicians: treating physicians, examining physicians, and non-examining

physicians. The opinions of treating physicians are generally accorded greater weight than the

opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A

treating doctor's opinion that is not contradicted by the opinion of another physician can be

rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. Tommasetti, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. Smolen, 80 F.3d at 1286.

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." Molina v. Astrue, 674 F.3d 1104, 1111 (alteration in original); see also 20 C.F.R. § 404.1513(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). While their opinions must still be evaluated, 20 C.F.R. § 404.1527(c), the ALJ may "discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" Ghanim, 763 F.3d at 1161 (quoting Molina, 674 F.3d at 1111).

Examining psychologist Dr. Dean evaluated Plaintiff on May 4, 2012. Tr. 450. She diagnosed Plaintiff with post-traumatic stress disorder, generalized anxiety disorder, major depression, pain disorder, and panic disorder. Tr. 457. She opined Plaintiff's ability to work was "quite limited" and "increased demands at this point would exacerbate [Plaintiff's] symptoms." Tr. 458. She also noted that Plaintiff had some moderate limitations in various areas of work-related mental functioning. Tr. 460-61.

Treating nurse practitioner Ms. Toledo-Silvestre began treating Plaintiff on October 24, 2011. On February 16, 2012, she opined that Plaintiff had moderate and marked limitations in various areas of work-related mental functioning, such as the ability to understand and remember instructions, the ability to maintain attention and concentration, the ability to respond appropriately to changes in the work setting, and "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 522. Ms. Toledo-Silvestre also stated that Plaintiff found it challenging to leave the house. Tr. 523. She noted that Plaintiff stated that "anxiety, depression, and problems with her memory and concentration are severe enough to be unable to work…." Tr. 522.

On June 14, 2012, Ms. Toledo-Silvestre's treatment notes state that Plaintiff "has very challenging depression and severe anxiety," and that Plaintiff stated that she was unable to work because of both mental health and physical problems. Tr. 496.

In an October 2013 letter, Ms. Toledo-Silvestre opined Plaintiff cannot work, even in low stress environments, due to her "major depressive disorder, post traumatic syndrome, social anxiety disorder, and agoraphobia." Tr. 541. Ms. Toledo-Silvestre described Plaintiff's inability to concentrate or cope with stress, severe mood swings, and chronic pain. Tr. 541. In addition,

she stated that Plaintiff cannot "drive or go on public transportation unless somebody goes with her as she could experience a panic attack." Tr. 541. She explained that while lithium helped with Plaintiff's suicidal ideation, Plaintiff was still "constantly depressed." Tr. 541.

The ALJ gave little weight to the opinions of Dr. Dean and Ms. Toledo-Silvestre. He found that their opinions were not supported by the objective medical evidence of record, including Ms. Toledo-Silvestre's treatment notes. Tr. 23. He also found that their opinions did not comport with the record as a whole, including Plaintiff's "extensive activities of daily living." Tr. 23. Further, he found that Ms. Toledo-Silvestre's opinions were based heavily on Plaintiff's subjective complaints. Tr. 23. Finally, he noted that Ms. Toledo-Silvestre was not a medically acceptable source. Tr. 23.

A.  Objective Medical Evidence

The ALJ found that Dr. Dean and Ms. Toledo-Silvestre's opinions were not supported by objective medical evidence in the record, including Ms. Toledo-Silvestre's treatment notes. A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating provider. Ghanim, 763 F.3d at 1161. Here, however, substantial evidence does not support the ALJ's conclusion that Dr. Dean and Ms. Toledo-Silvestre's opinions were inconsistent with the treatment notes. In fact, the ALJ provides no examples of inconsistency. Defendant attempts to show an inconsistency through the fact that Dr. Dean cited Plaintiff's statement that she was "crippled" by depression in 2008, yet Plaintiff worked part time from 2009-2011. Defendant also argues that Ms. Toledo-Silvestre was inconsistent when she stated that Plaintiff had a "very short attention span and cannot concentrate," but also that Plaintiff was "clear, logical, coherent" and had a good memory. Compare Tr. 541 and Tr. 436. However, there are no inherent contradictions in these

observations. Defendant's other examples similarly fail. The treatment notes consistently reflect that Plaintiff has anxiety, fear of leaving the house, severe depression, and post-traumatic stress disorder. See e.g., Tr. 444-46, 496-97, 502-06. It is true that some notes reflect Plaintiff feeling more hopeful or having reduced suicidal ideation due to taking lithium. However, "such observations must be read in context of the overall diagnostic picture the provider draws." Ghanim, 763 F.3d at 1161 (citation omitted); see also Holohan, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Therefore, the Court does not uphold the ALJ's finding on this issue.

B.  Daily Activities

The ALJ also found that Dr. Dean and Ms. Toledo-Silvestre's opinions were inconsistent with the extent of Plaintiff's daily activities, particularly those associated with caring for a minor child as a single mother. Tr. 23. As discussed above, a full portrayal of Plaintiff's daily activities is more nuanced than the ALJ describes in his opinion. However, the ALJ presents substantial evidence to support a finding that Plaintiff's activities demonstrate that she is not as limited as Dr. Dean and Ms. Toledo-Silvestre suggest. Therefore, the Court upholds the ALJ's determination on this issue.

C.  Plaintiff's Subjective Complaints

The ALJ discounted Ms. Toledo-Silvestre's opinion because it appeared to be "based heavily on [Plaintiff's] subjective complaints." Tr. 23. A treating physician's opinion may be rejected if it is based on a non-credible claimant's subjective reports. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). A medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once

those complaints have themselves been properly discounted." <u>Andrews v. Shalala</u>, 53 F.3d 1035,

1043 (9th Cir. 1995). Although Ms. Toledo-Silvestre's notes contain her own clinical

observations, her assessment of Plaintiff's ability to work, use public transportation, and leave

the house, appears to be largely based on Plaintiff's self-reports of symptoms and limitations.

<u>See</u> <u>e.g.</u>, Tr. 496, 522. Because the ALJ found that Plaintiff was not credible, the ALJ correctly

concluded that to the extent Ms. Toledo-Silvestre's opinion is based on Plaintiff's subjective

reports, Ms. Toledo-Silvestre's opinion should be given little weight.

    D.  Acceptable Medical Source

    The ALJ stated that he discounted Ms. Toledo-Silvestre's opinion because, as a

psychiatric mental health nurse practitioner, she was "not a medically acceptable source." Tr. 23.

"Acceptable medical sources" are defined in the regulations as sources who "can provide

evidence to establish an impairment," including licensed physicians and licensed or certified

psychologists. 20 C.F.R. § 1513(a). Nurse practitioners are not listed as acceptable medical

sources, but are instead listed in the regulations as "other sources." 20 C.F.R. § 1513(d)(1). <u>See</u>

<u>also Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996)("Acceptable medical sources specifically

include licensed physicians and licensed psychologists, but not nurse practitioners."); <u>see also</u>

<u>Ybarra v. Commissioner of Social Sec.</u>, No. 03:10-CV-949-BR, 2011 WL 4501946, at *7 (D. Or.

Sept. 28, 2011) ("Although psychiatric mental health nurse practitioners . . . are considered

medical sources, they are not 'acceptable medical source[s]' pursuant to 20 C.F.R. § 404.1502.").

    Factors the ALJ should consider when determining the weight to give an opinion from

"other" sources such as nurse practitioners include: the length of time the source has known the

claimant and the number of times and frequency that the source has seen the claimant; the

consistency of the source's opinion with other evidence in the record; the relevance of the

source's opinion; the quality of the source's explanation of his opinion; and the source's training

and expertise. SSR 06–03p, at *4; see also Tupper v. Astrue, No. 3:10-CV-3039-BR, 2011 WL

2710021, at *4 (D. Or. July 12, 2011).

Here, Ms. Toledo-Silvestre has treated Plaintiff since 2011. However, as noted, the ALJ

found her opinion inconsistent with other evidence in the record and largely based on Plaintiff's

subjective complaints. Furthermore, Ms. Toledo-Silvestre's opinions contradicted those of two

nonexamining acceptable medical sources, state agency psychological consultants Barney

Greenspan, Ph.D., and Joshua Boyd, Psy.D. Tr. 23-24. The ALJ gave some weight to Dr.

Greenspan's opinion that "the claimant could have casual contact with coworkers and the general

public." Tr. 23-24. The ALJ gave great weight to Dr. Boyd's opinion and adopted it in the RFC,

because Dr. Boyd had the opportunity to review additional records and his opinion was

supported by the objective evidence and the record as a whole. Tr. 24. Dr. Boyd opined that

Plaintiff "was capable of carrying out very short and simple instructions, was limited to

occasional interaction with the public, and could have casual contact with coworkers." Tr. 24. In

addition, Dr. Boyd indicated that Plaintiff "would benefit from additional instruction and time

when adapting to more complex changes, and would benefit from assistance in setting work

goals"; however, these were "occupational suggestions, not limitations per se." Tr. 24.

Thus the record reflects that Ms. Toledo-Silvestre's opinion was inconsistent with

Plaintiff's daily activities, was largely based on Plaintiff's subjective complaints, and was

inconsistent with those of "acceptable medical sources" in the record. Accordingly, the Court

concludes that the ALJ did not err when he discounted the weight given to Ms. Toledo-

Silvestre's opinion.

E.   Medical Evidence Conclusion

In summary, the Court affirms the ALJ's decision to grant "little weight" to Dr. Dean and Ms. Toledo-Silvestre's opinions. While the Court disagrees with the ALJ's assessment of their opinions' consistency with the treatment notes, the Court agrees the opinions are inconsistent with the record as a whole. Furthermore, the Court finds that the ALJ's decision to discount Ms. Toledo-Silvestre's opinion based on her reliance on Plaintiff's subjective complaints and her role as a nurse practitioner is supported by substantial evidence.

## III.   Residual Functional Capacity

Plaintiff contends that the ALJ's RFC assessment fails to account for Plaintiff's limited ability to interact appropriately with supervisors or maintain persistence, attention, and concentration. Plaintiff's argument fails for two reasons. First, the evidence that Plaintiff presents in support of her argument—her own testimony and the opinions of Dr. Dean and Ms. Toledo-Silvestre—is all properly discounted by the ALJ as discussed above. Second, the ALJ relies on state agency psychological consultant Dr. Boyd's opinion and determines it is more credible. Tr. 24. Dr. Boyd opined that Plaintiff "was capable of carrying out very short and simple instructions; was limited to occasional interaction with the public; and could have casual contact with coworkers." Tr. 24. The ALJ adopted Dr. Boyd's opinion and included in the RFC all of the limitations described by Dr. Boyd. Therefore, the ALJ adequately captured the Plaintiff's limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").

Plaintiff also contends that the ALJ erred by declining to include stricter limitations on Plaintiff's ability to lift and carry. This argument similarly fails. The ALJ did not find Plaintiff's

testimony credible. Therefore, he was not obligated to rely on it in developing his RFC assessment. The RFC captures the physical limitations reflected in the objective medical evidence. For example, the RFC captures the opinions of the state agency medical consultants, which were given "some weight," in limiting Plaintiff's ability to lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 24. The ALJ's RFC is therefore supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this _____30_____ day of December, 2014

MARCO A. HERNÁNDEZ
United States District Judge